1  **WO**

2

3

4

5

6  IN THE UNITED STATES DISTRICT COURT

7  FOR THE DISTRICT OF ARIZONA

8

9  VIOLET M. ORR,                          )  No. CV-05-0080-PHX-SMM
                                            )
10         Plaintiff,                       )  **MEMORANDUM OF DECISION AND**
                                            )  **ORDER**
11  v.                                      )
                                            )
12  Jo Anne B. BARNHART, Commissioner)
   of Social Security Administration,       )
13                                          )
           Defendant.                       )
14  _____)

15         Pending before the Court are Plaintiff's Motion for Summary Judgment [Doc. No. 9] and

16  Defendant's Cross-Motion for Summary Judgment [Doc. No. 14].  After considering the

17  arguments raised by the parties in their briefs, the Court issues the following Memorandum of

18  Decision and Order.

19                            **BACKGROUND**

20         Here, the Court only sets forth a few facts and procedural details to resolve the pending

21  Motions.  A more complete history of the case is set forth in the Court Transcript ("CT") [Doc.

22  No. 4], attached to Defendant's Answer [Doc. No. 3].

23         On December 5, 2001, Plaintiff Violet Orr applied for disability insurance benefits under

24  Title II and of the Social Security Act.  [CT 49-51]  In the application, she alleged that she had

25  been disabled since September 14, 1998. [Id.]  In a "Disability Report, Adult," Plaintiff alleges

26  that she suffers from "spinal stenosis, back pain shooting down my leg, neck & shoulder pain,

27  Fibromyalgia/chronic fatigue, feet/leg problems." [CT 56].

28

1    Plaintiff's claims, however, were denied initially and on reconsideration. [CT 28-31, 33-
2  36] Following a timely request, a hearing was held before an Administrative Law Judge
3  ("ALJ") on May 5, 2003.  [CT 241-68].

4    On August 5, 2003, ALJ Ronald S. Robins issued a decision finding that Plaintiff's
5  disability commenced on April 1, 2003 and that Plaintiff was entitled to Disability Insurance
6  Benefits under Sections 216(i) and 223 of the Social Security Act. [CT 32-42]  Plaintiff
7  subsequently appealed this decision as she believes that she was disabled as of August 22, 2001.

8    On November 9, 2004,  the Appeals Council, in the Office of Hearings and Appeals, for
9  the Social Security Administration ("Appeals Council") denied Plaintiff's request for review.
10  [CT 7-9]  The Appeals Council, found that Plaintiff had not presented a basis for changing the
11  ALJ's decision.  [Id.] Upon the denial of the appeal, the ALJ's decision became the final
12  decision    on    Plaintiff's    case    by    the    Commissioner    of    Social    Security.

13    Plaintiff filed a Complaint [Doc. No. 1] on January 7, 2005, seeking to have the Court
14  reverse and set aside the decision of the Appeals Council and the Commissioner, order the
15  Commissioner to pay Plaintiff's claim for disability insurance benefits with a disability date of
16  August 22, 1001, in addition to costs and attorney's fees, and award such other relief as deemed
17  just and proper.  Defendant filed an Answer [Doc. No. 3] on April 11, 2005.

18    On October 24, 2005, Plaintiff filed a Motion for Summary Judgment on Complaint for
19  Judicial Review of Administrative Determination of a Claim for a Period of Disability and
20  Disability Insurance Benefits and Supplemental Security Income. [Doc. No. 9]  Defendant
21  responded on November 29, 2005, and also asserted a Cross-Motion for Summary Judgment.
22  [Doc. No. 14]

23    The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

24                 **STANDARD OF REVIEW**

25    The decision of the Commissioner of Social Security Administration must be affirmed
26  if it is supported by substantial evidence and the Commissioner applied the correct legal
27  standards.  See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004);
28  Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003).   When reviewing factual

1   determinations by the Commissioner, acting through the administrative law judge, this Court

2   affirms if substantial evidence supports the determinations.  See Celaya v. Halter, 332 F.3d

3   1177, 1180 (9th Cir. 2003); Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial

4   evidence is more than a mere scintilla, but less than a preponderance.  See Howard ex rel. Wolff

5   v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003); Mayes v. Massanari, 276 F.3d 453, 459 (9th

6   Cir. 2001).  Substantial evidence, considering the entire record, is relevant evidence which a

7   reasonable person might accept as adequate to support a conclusion.  Howard, 341 F.3d at 1011;

8   Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

9        If the evidence can reasonably support either affirming or reversing the Commissioner's

10  conclusion, the Court may not substitute its judgment for that of the Commissioner.  See Batson,

11  359 F.3d at 1193; McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).  The ALJ is

12  responsible for determining credibility, resolving conflicts in medical testimony, and for

13  resolving ambiguities.  See Benton, 331 F.3d at 1040; Edlund v. Massanari, 253 F.3d 1152,

14  1156 (9th Cir. 2001).  The ALJ's determinations of law are reviewed de novo, although

15  deference is owed to a reasonable construction of the applicable statutes.  See Edlund, 253 F.3d

16  at 1156; McNatt v. Apfel, 201 F.3d 1084, 1087 (9th Cir. 2000).

17                                    **DISCUSSION**

18       Regulations governing a disabled individual's entitlement to Social Security disability

19  insurance benefits and supplemental security income establish a five-step sequential process for

20  evaluating whether an individual is "disabled."  20 C.F.R. §§ 404.1520 & 416.920.  "Disabled"

21  is defined, in part, as "the inability to do any substantial gainful activity by reason of any

22  medically determinable physical or mental impairment which can be expected to result in death

23  or which has lasted or can be expected to last for a continuous period of not less than 12

24  months."  20 C.F.R. §§ 404.1505(a) & 416.905(a).  Plaintiff bears the burden of proof for steps

25  one through four, while the Commissioner has the burden at step five to show that a claimant

26  who is unable to perform his or her relevant work can perform other jobs existing in significant

27  numbers in the economy.  20 C.F.R. §§ 404.1520 & 416.920; see also Tackett v. Apfel, 180

28  F.3d 1094, 1097 n.3 (9th Cir. 1999); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).

If a determination that the claimant is, or is not, disabled can be reached at any step of the process, it is unnecessary to proceed throughout the subsequent steps.

**A. Step One: Substantial Gainful Activity Since the Onset Date of Disability**

The parties do not dispute that Plaintiff has satisfied this first step of the analysis. See 20 C.F.R. §§ 404.1520(a)(4)(i) & 416.920(a)(4)(i) (first step involves consideration of work activity; a finding of not disabled will issue if substantial gainful activity is found). The ALJ found that Plaintiff has not performed substantial gainful activity since the onset date of her disability on September 14, 1998. [CT 17]

**B. Step Two: The Medical Severity of Plaintiff's Impairments**

At the second step, the Social Security Administration considers the medical severity of the impairment(s) claimed by the claimant for disability benefits. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). If the claimant does not have a severe medically determinable physical or mental impairment that has lasted or is expected to last for a continuous period of at least 12 months (unless the impairment is expected to result in death), or a combination of impairments that is severe and lasts for so long, the Social Security Administration will find the claimant is not disabled. Id.; see also 20 C.F.R. § 404.1509 (explaining duration requirement). An impairment or combination of impairments is not severe if it does not significantly limit the applicant's physical or mental ability to do basic work activities, including, among other things, physical functions (*e.g.*, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling); capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521 & 416.921; see also 20 C.F.R. §§ 404.1520(c) & 416.920(c); Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987).

The Ninth Circuit has defined the step-two inquiry as "a de minimus screening device to dispose of groundless claims." Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality

1   that has no more than a minimal effect on an individual's ability to work.  See SSR 85-28;

2   Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).

3        At the step two inquiry, the ALJ must consider the combined effect of all of the

4   claimant's impairment on her ability to function, without regard to whether each alone was

5   sufficiently severe.  See 42 U.S.C. § 423(d)(2)(B) (Supp. III 1991); SSR 86-8; see also SSR 85-

6   28.  The ALJ must also consider the claimant's subjective symptoms, such as pain or fatigue,

7   in determining severity.  SSR 88-13.

8        The ALJ determined that Plaintiff has the following severe impairments: moderate

9   degenerative disc disease, neural forminal stenosis and back pain. [CT 17]. Plaintiff,

10  however, contends that the ALJ erred at this second step of the sequential evaluation,

11  because he failed to consider Plaintiff's Fibromyalgia and Depression as severe impairments.

12      **1. *Depression***

13       Plaintiff contends that the ALJ improperly failed to consider her depression a severe

14  impairment when the record contains evidence that both Dr. General (a licensed pyschologist

15  that examined Plaintiff at the request of the state agency) and Dr. Burrell (Plaintiff's treating

16  physician from August 7, 1998 to May 1, 2003) diagnosed Plaintiff with dysthymia disorder.[1]

17  Initially, the Court finds that the ALJ recognized and accepted the respective diagnoses of Dr.

18  General and Dr. Burrell but then found that based on the evidence contained in the record that

19  Plaintiff's depression would not have made more than a minimal impact on her ability to work.

20  [CT 17].  Specifically, the ALJ found that Plaintiff has never pursued counseling or therapy and

21  the progress notes in the record that reference depression do not specify any specific symptoms

22  caused by Plaintiff's depression.  The ALJ also specifically relied on Dr. General's opinion that

23  her dysthymic disorder was reactive to her orthopedic difficulties, that "her prognosis for the

24  work force was good in terms of cognitive skills such as attention, concentration and most

25  aspects of short-term memory" and that she did not have any nonexertional limitations due to

26

27       [1]  The Court finds that the ALJ did not reject the opinion of Plaintiff's treating physician in favor of an
28  agency physician as both Dr. Burrell and Dr. General diagnosed Plaintiff with dysthymia.

- 5 -

1  her dysthymic disorder. [CT 17]. Significantly, Dr. Enos, a second agency psychologist, also
2  reviewed the record on March 21, 2002 and found that Plaintiff did not have a severe mental
3  impairment. [CT 180-92].

4      Plaintiff, however, contends that Dr. General "opined" that Plaintiff was seriously limited
5  in her ability to deal with stress and that this would effect her punctuality.  Upon review of the
6  record, the Court finds that Plaintiff is attempting to re-characterize her statements to Dr.
7  General as his diagnosis.  In fact, the Background section of Dr. General's report contains, in
8  quotes, Plaintiff's answer to a question regarding her prior employment: "[i]t was getting to
9  stressful for me." [CT 174].   Plaintiff also argues that Dr. General found that her depression
10 interferes with her sleep pattern and that her lack of sleep would affect here ability to be
11 punctual which would have more than minimal effect to work.  Again, Plaintiff is relying on her
12 own self reports as evidenced by Dr. General's report which specifically states: "Violet reports
13 difficulty falling asleep"and that "I [Plaintiff] would not be on time because of lack of sleep
14 caused by the Pain." [CT 174, 176].

15     Plaintiff also argues that Dr. General found that she had a limited ability to relate to
16 coworkers, deal with the public, interact with supervisors and understand, remember and carry
17 out complex instructions.  Plaintiff is again mis-characterizing Dr. General's findings.  Dr.
18 General evaluated Plaintiff using a chart that had 4 categories: 1) Unlimited/Very Good, 2)
19 Good: Limited but Satisfactory, 3) Fair: Seriously Limited, but not precluded and 4) Poor,
20 None.  Dr. General marked the second category "Good: Limited but Satisfactory" for all of the
21 occupational adjustment criteria except "Deal[s] with work stresses" which he rated as "Fair:
22 Seriously Limited but not Precluded" due to Plaintiff's self reported problems with punctuality.
23 [CT 178].

24     Accordingly, the Court finds that the ALJ considered all of the evidence including the
25 diagnosis of both Dr. Burrell, Dr. General and found that while Plaintiff had been diagnosed
26 with depression, her depression did not have more than minimal effect on  her ability to work.
27 [CT 17].  The Court also finds that this determination is supported by substantial evidence
28 including the diagnosis of Dr. General and the opinion of Dr. Enos and is not contradicted by

the diagnosis or opinion of Dr. Burrell (Plaintiff's treating physician) and therefore affirms this finding.

### 2. *Fibromyalgia*

Plaintiff also argues the ALJ erred at step two of the sequential evaluation by failing to find that Plaintiff's fibromyalgia was a severe impairment.

If Plaintiff produces objective medical evidence of an underlying impairment, then the Commissioner "may not reject a claimant's subjective complaints solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). The ALJ must then identify clear and convincing reasons for rejecting claimant's testimony. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).

Plaintiff contends that Dr. Burrell noted the presence of typical tender points on August 5, 1998 and diagnosed her with fibromyalgia on October 3, 2001. The ALJ, however, found that the progress notes only indicated that her joints were slightly stiff and tender and found that her fibromyalgia was not a severe impairment for the following three reasons: 1) there was no evidence of acute inflamation; 2) there was no mention of any further treatment of the disease or any mention of the disease from August of 1998 to August of 2001; and 3) the diagnosis is not entitled to significant weight as it was not made by a rheumatologist nor were there any referrals to one. [CT 18].

Plaintiff, however, argues that inflammation is not a symptom of fibromyalgia and that the record contains repeated notations of fibromyalgia on Plaintiff's charts. Significantly, Dr. Burrell, Plaintiff's own treating physician made the following notation: "stiff tender but no acute inflammation" regarding Plaintiff's fibromyalgia. [CT 112]. While the record does contain the notations of "fibromyalgia" on Plaintiff's charts, the charts do not indicate whether Plaintiff was receiving treatment for fibromyalgia. See Smolen v. Chater, 80 F.3d 1273, (9th Cir. 1996) (stating that unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment is factor that goes to claimant's credibility).

The ALJ specifically stated that he relied on the opinion of Dr. Disney (a rheumatologist) over Dr. Burrell's diagnosis who was not a rheumatologist. Plaintiff, however, argues that under

1   20 CFR § 404.1527(d)(2) a treating source's opinion of the nature of Plaintiff's impairments is

2   well supported by medically acceptable clinical and laboratory diagnostic techniques, it will be

3   given controlling weight, unless it is inconsistent with other substantial evidence in the case

4   record.  Dr. Disney, reviewed Plaintiff's records including the references to fibromyalgia and

5   found that the objective findings do not support here complaints and that she could perform a

6   range of light work.  (CT 199-206).  A second agency doctor also expressly noted that Dr.

7   Disney was a rheumatologist and that he concluded that Plaintiff's symptoms and findings were

8   poorly coordinated.  Thus, the record does in fact contain substantial evidence that conflicts

9   with Dr. Burrell's diagnosis.[2]

10      Based on the foregoing, the Court finds that there was substantial evidence in the record

11  to support the ALJ's determination that Plaintiff's fibromylgia was not a severe impairment.

12  After reviewing the record, the Court finds that the ALJ did not err at step two by failing to

13  consider Plaintiff's Depression and Fibromyalgia severe impairments.

14  **C. Step Three: The Medical Severity of Plaintiff's Impairments**

15      At the third step, the Social Security Administration again considers the medical severity

16  of the claimant's impairments.  20 C.F.R. §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii).  If the

17  claimant has an impairment that meets or equals one of the Administration's listings, in a

18  particular appendix, see 20 C.F.R. § 404, subpt. P, App. 1, *and* the impairment has lasted or is

19  expected to last for a continuous period of at least 12 months (unless the impairment is expected

20  to result in death), the Administration will find the claimant is disabled.  20 C.F.R. §§

21  404.1520(a)(4)(iii) & 416.920(a)(4)(iii).  If the claimant satisfies these conditions, the

22  Administration will find the claimant disabled without considering age, education, and work

23  experience.  20 C.F.R. §§ 404.1520(d) & 416.920(d).

24

25      [2]  An ALJ need not give controlling weight to the opinion of a treating physician if he can point to
    specific reasons for rejecting the opinion that are supported by substantial evidence in the record.  Rollins v.
26  Massanari, 261 F.3d 853, 856 (9th Cir. 2001); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)
    ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not
27  binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.").
    Additionally, an ALJ  may reject the opinion of a treating physician based in part on a non-examining medical
28  source. Morgan v. Comm'r, 169 F.3d 595, 601 (9th Cir. 1999).

In considering the third step, the ALJ found that Plaintiff met the severity requirements of Listing 104 (disorders of the spine) as of April 1, 2003. Though conceding evidence of degenerative disc disease prior to that date, the ALJ found that Plaintiff's symptoms prior to April 1, 2003 were inconsistent with the level of severity necessary to meet or equal the severity of Listing 1.04. In addition, the ALJ credited the testimony of medical experts Dr. Drinkwater, and Dr. Disney, who opined that Plaintiff's physical impairments–whether considered separately or in combination–do not meet or equal the criteria of any listed impairments.

Under the Social Security regulations, disorder of the spine requires "a compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. § 404, subpt. P, App. 1. The ALJ found that prior to April 1, 2003, there was "no objective evidence of nerve root compression...." [CT 18].

The ALJ based this finding on the record as a whole including a comparison of Plaintiff's MRIs taken in August 2001 and April 2003, the opinions of Plaintiff's treating physicians Dr. Burrell and Dr. Bethel, and the opinions of Dr. Drinkwater and Dr. Disney, both state agency Doctors.

Specifically, the ALJ found that as of April 1, 2003, the following medical evidence supported his finding of disability: 1) positive straight leg raising; 2) deep tendon reflexes 2+/4 and equal; and 3) an MRI report in 2003 that, for the first time, expressly indicated the disc bulges "could yield" radiculpathy. [CT 18].

If determination of the onset is supported by substantial evidence, it should not be overturned even if another onset date could be assessed. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). While the record does indicate that prior to 2003, Dr. Burrell diagnosed radiculpathy, the Court finds that the record also contains substantial evidence to support the ALJ's determination of the onset date including: 1) the 2001 MRI indicated that the spinal canal is normal [CT 145]; 2) Dr. Burrell, Plaintiff's treating physician did not render an opinion of disability until May 1, 2003 [CT 218]; 3) On August 22, 2001, Dr. Drinkwater only found evidence of some tenderness and found no evidence of radiculpathy [CT 195]; 4) Dr. Drinkwater also found that Plaintiff's straight leg test was negative; [Id.] 5) Dr. Drinkwater also

1    concluded that Plaintiff could perform a light range of work; [Id.] and 6)   Dr. Disney

2    specifically stated that on May 12, 2002 that there was no evidence of radiculpathy and  found

3    that Plaintiff could perform a light range of work [CT 199-206].

4         Plaintiff contends that the ALJ erred in accepting the opinion of Dr. Drinkwater and Dr.

5    Disney and rejecting the opinion of her treating physician or physicians.[3]  The Ninth Circuit has

6    stated: "[a]lthough a treating physician's opinion is generally afforded the greatest weight in

7    disability cases, it is not binding on an ALJ with respect to the existence of an impairment or

8    the ultimate determination of disability." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.

9    2001).

10        While the Court notes that the treating physician's opinion cannot be rejected without

11   providing specific and legitimate reasons supported by substantial evidence in the record, the

12   Court finds that the ALJ complied with this requirement.  See Rollins v. Massanari, 261 F.3d

13   853, 856 (9th Cir. 2001).  Initially, the Court notes that Plaintiff's treating physician Dr. Burrell

14   did not provide his diagnosis of disability until May 1, 2003.  Therefore, even though the ALJ

15   may have rejected some of Dr. Burrell's or Dr. Bethel's opinions, the ALJ agreed with Dr.

16   Burrell's diagnosis of disability.

17        To the extent the ALJ rejected the opinions of Dr. Burrell and Dr. Bethel, the Court finds

18   that the ALJ specifically found that the objective medical evidence, specifically the MRI reports

19   did not support a diagnosis of radiculpathy prior April 1, 2003, that Plaintiff had repeatedly

20   failed to cooperate during her physical exams including one with Dr. Bethel, and that Plaintiff

21   lacked credibility.   Thus, the Court finds that the ALJ set forth specific and legitimate reasons

22   for rejecting the treating physicians' opinions.

23        The ALJ also found that Plaintiff's claim that she was incapable of all work prior to April

24   1, 2003 due to her symptoms was not credible. [CT 19].   The Ninth Circuit has held that

25   "[u]nless there is affirmative evidence showing that the claimant is malingering, the ALJ's

26

27        _____

28        [3]  The record indicates that Plaintiff treated with Dr. Burrell from August 7, 1998 to May 1, 2003 and
     with Dr. Bethel nine times between August 2001 and February 2002.

1    reasons for rejecting pain testimony must be clear and convincing." Burch, 400 F.3d at 680
2    (citing Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).

3            The Court finds that the ALJ provided specific reasons for rejecting Plaintiff's testimony
4    including: 1) Dr. Drinkwater noted a questionable volitional component during Plaintiff's
5    examination [CT 197-98]; 2) Dr. Bethel (one of Plaintiff's treating physicians) also noted that
6    Plaintiff "cooperated poorly with the motor portion of the exam. Despite repeated insistence,
7    she would not forcefully move her legs at any point." [CT 138]; 3) Plaintiff offered conflicting
8    accounts of her limitations and pain including reporting to Dr. General that she was a clean
9    fanatic and did all of the cooking, laundry and grocery shopping and then testifying that she
10   could not lift a gallon of milk without using two hands or that when she had flare-ups, she
11   could not "sit, stand or lie down." [CT 248, 255]; and 4) Plaintiff reported to Dr. Drinkwater
12   that she was independent but then testified at the hearing that she had trouble putting on her
13   shoes and socks, writing a letter, holding utensils or coffee cups, loading a dishwasher or
14   making the bed [CT 194, 255, 257-60].

15           Under existing Ninth Circuit precedent, an ALJ is permitted to consider ordinary
16   techniques for credibility evaluation, including inconsistencies in a claimant's testimony or
17   between testimony and the evidence and failure to give maximum effort during exams. Thomas
18   v. Barnhart, 278 F.3d 948, 958-59 (9th Cir. 2002) (approving an ALJ's interpretation that a
19   claimant's self limiting behavior during two physical exams argues "strongly as to her lack of
20   credibility.") Accordingly, the Court finds that the ALJ provided specific and clear and
21   convincing evidence that Plaintiff was not credible.

22           For these reasons, the Court finds the ALJ had substantial evidence to support his
23   conclusion that Plaintiff's degenerative disc disease, neural forminal stenosis and back pain did
24   not equal the severity of Listing 1.04 until April 1, 2003. See Howard, 341 F.3d at 1011
25   (substantial evidence is more than mere scintilla, but less than preponderance).

26   **D.  Step Four: Plaintiff's Residual Functional Capacity & Past Relevant Work**

27           The parties do not dispute that Plaintiff has satisfied the fourth step of the analysis. See
28   20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv) (fourth step involves consideration of

1 | claimant's residual functional capacity and past relevant work; a finding of not disabled will

2 | issue if claimant can still do past relevant work).  The ALJ found Plaintiff unable to perform her

3 | past work.  [CT 20-21]

4 | **E.  Step Five:  Factors for Adjustment to Other Work**

5 | At the fifth step, the Social Security Administration considers its assessment of the

6 | claimant's residual functional capacity, as well as the claimant's age, education, and work

7 | experience to determine if the claimant can make an adjustment to other work.  See 20 C.F.R.

8 | §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v) (fifth step hinges on ability to adjust to other work;

9 | if claimant can adjust, a finding of not disabled will issue).  If the claimant retains the capacity

10 | to perform his or her past relevant work, defined as work the claimant has performed in the past

11 | fifteen years, see 20 C.F.R. § 404.1560(b)(1), the claimant is not disabled.  See 20 C.F.R. §

12 | 404.1520(f).  At this step, the burden of proof shifts to the Social Security Administration to

13 | show there are jobs in sufficient numbers in which the claimant could work.

14 | The ALJ found that Plaintiff was only credible as to her inability to engage in heavy

15 | lifting or engage in prolonged periods of walking or standing.  The ALJ, however, also

16 | specifically considered Plaintiff's pain and fatigue and reduced her residual functioning capacity

17 | to include a sit/stand option.[4]  The ALJ also concluded that Plaintiff retained the capacity to

18 | perform jobs existing in significant numbers in the economy.  [CT 21]  He made this

19 | determination based on the vocational expert's finding that an individual, with Plaintiff's

20 | vocational characteristics and the limitations found by the ALJ (specifically the need for a

21 | sit/stand option), could perform unskilled sedentary work as a cashier (of which there are 2,100

22 | available jobs in Arizona and 100,000 available jobs nationally).  [Id.]

23 | The Court has reviewed the ALJ's conclusion at step five and finds that it is supported

24 | by substantial evidence.

25 | **F.  Plaintiff's Claims of Fatigue**

26 | _____

27 | [4]  The ALJ found Plaintiff not credible due to her exaggeration of her symptoms to the point they were
unbelievable, Plaintiff's conflicting and inconsistent testimony regarding the severity of her symptoms and
28 | evidence that Plaintiff cooperated poorly during her physical exams.

1     Plaintiff also contends that the ALJ did not properly assess her testimony of suffering

2  from chronic fatigue syndrome.   Plaintiff contends that Dr. Burrell diagnosed her with chronic

3  fatigue syndrome on October 3, 2001 and that the record contains evidence of treatment for

4  chronic fatigue syndrome and that she was prescribed drugs to treat her chronic fatigue

5  syndrome.

6     Plaintiff cites <u>Reddick v. Chater</u>, 157 F.3d 715 (9th Cir. 1998) for the proposition that

7  it is improper to evaluate fatigue symptoms as pain symptoms and held that the denial of

8  disability was not supported by substantial evidence because "neither doctor assessed claimant's

9  ability to perform work on a sustained basis in light of the fatigue caused by CFS." <u>Id</u>. at 728.

10     In the instant case, however, the ALJ specifically recognized Plaintiff's fatigue and

11  downgraded Plaintiff's residual work capacity to a sit/stand option. [CT 19].  Additionally, the

12  record indicates that both Plaintiff's treating physicians noted Plaintiff's fatigue in evaluating

13  in their progress notes and did not render an opinion of disability until May 2003. [ 138 (Dr.

14  Bethel), 105(Dr. Burrell)].

15     Thus, the Court finds that Plaintiff's contention that the ALJ did not consider Plaintiff's

16  chronic fatigue syndrome is not supported by the record.

17  **G.  Remand for Payment of Benefits**

18     Given that the Court has concluded there was substantial evidence upon which the ALJ

19  rested his decision, the Court finds that this matter should not be remanded for a payment of

20  benefits, and rejects Plaintiff's argument accordingly.

21                                **CONCLUSION**

22     Accordingly, for the reasons set forth above,

23     **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. No.

24  9] is **DENIED**.

25     **IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [Doc.

26  No. 14] is **GRANTED**.

27     **IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly

28  and terminate this case.

1    DATED this 27th day of March, 2006.

2

3

4                                          Stephen M. McNamee
                                     Chief United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28